IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

**FILED**

⌐JAN 3 1 2002⌐

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

|  |  |
|---|---|
| LARRY CHAPIN, SONYA CHAPIN, ROBERT ALKEMA, SHARON ALKEMA, DAVID DANS-BERRY, TRENETRA DANSBERRY, EUTAW HOUSING, LTD., GREENSBORO HOUSING, LTD., ALICE MORRIS, and HAROLD MORRIS, on behalf of themselves and all persons similarly situated, | ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| TEMPLE-INLAND INC. a Delaware corporation; TEMPLE-INLAND FOREST PRODUCTS CORPORATION; and TEMPLE-EASTEX CORPORATION, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**ENTERED**

FEB 1  2002

Civil Action Number
01-C-1043-W

## MEMORANDUM OPINION

Defendants Temple-Inland Inc. and Temple-Inland Forest Products Corporation have

moved this Court to transfer the case to the Eastern District of Texas, pursuant to 28 U.S.C.A.

§1404(a) and alternatively to dismiss those Plaintiffs whose claims do not satisfy the requisite

amount in controversy requirement of 28 U.S.C. §1332. On consideration of the submitted

evidence and arguments, the Court concludes that in the interests of justice, the Motion to

Transfer should be granted.



## I. Facts

Defendants are manufacturers of exterior hardboard siding for residential structures. Defendants' siding was allegedly used in homes ultimately purchased by the named Plaintiffs and the putative class on whose behalf they sue. Plaintiffs allege that Defendant's hardboard siding is inherently defective, and that Defendants have breached expressed and implied warranties, fraudulent misrepresented facts concerning the hardboard siding, and fraudulently suppressed materials facts concerning quality of the product. Plaintiffs allege that they have suffered substantial damages as a proximate result of Defendants' allegedly tortious conduct.

Plaintiffs Larry and Sonya Chapin, Eutaw Housing Ltd., and Greensboro Housing, Ltd., are domiciled in the State of Alabama. Plaintiffs Robert and Sharon Alkema, David and Trenetra Dansberry, and Alice and Harold Morris are all residents of the State of Tennessee.

According to the complaint, Defendants are based in Texas, "the siding was manufactured in Texas, and the warranties were made in and emanated from Texas. All material decisions relating to the Class' claims were therefore made in Texas and the State has significant contact with the claims of each Class member." (Amended Compl. ¶ 22.)

Between 1996-2000, the State of Alabama accounted for only 1.22% of Defendants' sales of hardboard siding. On the other hand, during the same period, the State of Texas accounted for more than half (58.38%) of Defendants' sales of hardboard siding. The State of Tennessee accounted for 3.3% of such sales.

The putative class is basically defined as

[a]ll persons and entities in states where Temple-Inland hardboard siding is sold
and distributed that have owned or own structures on which Temple-Inland
hardboard siding manufactured at the Diboll, Texas, plant has been installed
from January 1, 1979 to the date of the Final Order and Judgment herein.

(Compl.¶ 30.)  It is the avowed intention of the named Plaintiffs to "narrow the class to include persons and entities in only those states where the vast majority of the siding is sold and distributed."  (Id. ¶ 31.)

All of the persons identified by Defendants in their Initial Disclosures as having knowledge of the facts in this case are located in Texas. Plaintiffs have not pointed to any potential witnesses, other than some of themselves, who live in Alabama. It is not too much to assume that the vast majority of the documents relating to liability *vel non* are likewise located in Texas, and the Plaintiffs have not proffered or argued otherwise.

While implicitly conceding that probably only two of the named Plaintiffs satisfy the $75,000 amount in controversy requirement – namely, Eutaw Housing, Ltd. and Greensboro Housing Ltd.  Plaintiffs assert that this Court has supplemental jurisdiction over claims of any other named class representatives and any non-named class members whose individual claims do not exceed $75,000, pursuant to 28 U.S.C. § 1367(a).

## II.  The Applicable Law

Title 28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Resolution of a §1404(a) motion to transfer is a two-step process.  The first step is to determine whether the action could originally have been brought in the suggested forum. If that condition is met, at the next step the court must determine whether a transfer would maximize convenience and promote justice.

According to Justice Marshall,

[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "'individualized, case-by-case consideration of convenience and fairness. Van Dusen v. Barrack, 376 U.S.

612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer
under § 1404(a) thus calls on the district court to weigh in the balance a
number of case-specific factors.

Stewart Organization v. Ricoh Corporation, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988).

Among the factors to be considered in passing on a motion to transfer are: 1) the private interests

of the litigant, 2) the relative ease of access to sources of proof, 3) the availability of compulsory

process for attendance of unwilling witnesses , 4) the cost of obtaining attendance of willing

witnesses, 5) the possibility of a view of the premises, if a view would be appropriate to the

action, 6) plaintiff's choice of forum, 7) the relationship of the suggested court to the case or

controversy, 8) whether the suggested court is "at home" with the state law which must govern

the case, and 9) "all other practical problems that make trial of a case easy, expeditious and

inexpensive." Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947).

A plaintiff's choice of forum is entitled to great deference, and "unless the balance is

strongly in favor the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. at

508. The defendant bears the burden of establishing that the suggested forum is more

convenient. See In re Ricoh Corporation, 870 F.2d 570, 572 (11th Cir.1989). On consideration of

these factors, the Court must weigh the relative advantages and obstacles to a fair trial.

### III. Analysis

The first step of the analysis is uncomplicated. Everyone concedes that this case could

have originally been brought in the Eastern District of Texas.

Turning to the second prong of the analysis, the Court is compelled to find that the

convenience factors are heavily tilted in favor of transfer. Virtually all of the proof of liability is

in Texas. The witnesses are there, all of the documents are there. Tellingly, Plaintiffs' counsel

requested that Defendant produce in Texas the documents requested by Plaintiffs because Texas

is "the most convenient location for both sides." (Letter from P. Burke to R. Linchenstein of June 22, 2001.) It is thus clear that access to the documentary evidence in this case would be greatly enhanced by a transfer to the Eastern District of Texas.

The witnesses having knowledge of liability issues in this case are in Texas and are beyond the subpoena power of this Court. And even if these witnesses waive the 100-mile radius limitation, the costs and expenses of their attendance at depositions and/or trial in the Northern District of Alabama, rather than in the Eastern District of Texas, are infinitely greater. See Merritt v. Jay Pontiac-GMC Truck, Inc., 952 F.Supp. 754, 756 (M.D Ala. 1996).

The manufacturing facilities involved in this case are all located in the Eastern District of Texas. One cannot know whether a view of these facilities may be helpful to the trier of fact, but it well may be.

The contacts of the State of Texas with this case are far more substantial than those of Alabama. The allegedly defective product was manufactured there; and over half of the sales were made in that state, rather than Alabama. See Insuracorp, Inc., v. American Fidelity Assurance Co., 914 F.Supp. 504 (M.D. Ala. 1996).

Plaintiffs do not deny that Texas law will likely control in this case. Federal judges of the Eastern District of Texas are far more familiar with Texas law than Alabama federal judges. See id.

This is a putative class action. Only a relative handful of the putative class members live in Alabama. A solid majority of the putative class members are Texas residents.

Four of the eight law firms representing Plaintiffs are Texas law firms.

The only factor favoring retention of this case in this Court is Plaintiffs' choice of forum. Significantly, only four of the ten named Plaintiffs are Alabamians. The remaining six are

Tennesseans. Even if all of the named Plaintiffs were domiciled in Alabama, their choice of this forum is greatly outweighed by convenience and cost considerations.

The interests of justice would best be served by the transfer of this case, with its accompanying unresolved Motion to Dismiss, to the United States District Court for the Eastern District of Texas.

It shall be done by separate order.

Done this __31st__ day of January, 2002.

_____
Chief United States District Judge
U.W. Clemon